**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **MEANA L. WARD,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | |
| | * | **Civil Case No.: PWG-14-4040** |
| **STG INTERNATIONAL, INC.,** | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

While working for Defendant STG International, Inc. ("STG"), Plaintiff Meana Ward, an African-American woman, reported what she perceived as sexual harassment of one of her subordinates by another co-worker and thereafter experienced what she believed to be racial discrimination, a hostile workplace, and retaliation for her reporting. Am. Compl. ¶¶ 7–13, 46, 129, ECF No. 29. She was terminated on June 27, 2006 and filed a claim with the Montgomery County, Maryland Office of Human Rights ("MCOHR") on December 21, 2006, which she cross-filed with the Equal Employment Opportunity Commission ("EEOC"), claiming retaliation. *Id.* ¶¶ 67, 88, 91. The administrative process concluded on September 30, 2014, *id.* ¶ 122, and within ninety days of receiving a Dismissal and Notice of Suit Rights, ECF No. 1-1, but more than eight and a half years after her termination, Ward filed suit in this Court on December 30, 2014, alleging, *inter alia*, racial discrimination, hostile work environment, and retaliation, in violation of federal, state and county laws, Compl., ECF No. 1. At the time, she

was unrepresented, and issues of exhaustion of administrative remedies and timeliness were evident on the face of her Complaint.

On those bases, STG moved to dismiss.  ECF No. 12.  I denied the motion without prejudice, ECF No. 26, and permitted Ward, who had retained counsel, to file an Amended Complaint in response to it, after I advised that any dismissal subsequent to the amendment would be with prejudice, ECF No. 25.  The Amended Complaint includes claims of racial discrimination, hostile work environment, and retaliation, in violation of federal, state and county laws. Now pending is STG's Motion to Dismiss the Amended Complaint, ECF No. 30.[1]  Ward has abandoned her hostile workplace claims, this Court lacks jurisdiction over Ward's racial discrimination claims, and Ward fails to state a claim for retaliation.  Accordingly, I will dismiss Ward's Amended Complaint with prejudice.

## Background

Ward worked for STG "on various government contracts" as a "team lead" under the supervision of Margaret Cross and Reginald Hosea, two African-Americans.  Am. Compl. ¶¶ 5, 7, 8, 41.[2]  On April 27, 2006, another team lead, Johnny Holliday, also African-American, made what Ward perceived as an "inappropriate sexual comment" to Ward's subordinate, Christina Simmons, also African-American, telling her "I have something for you to choke on." *Id.* ¶¶ 7–13.  Ward reported the comment to management and human resources. *Id.*  Then, on June 6,

---

[1] The parties fully briefed the motion.  ECF Nos. 31, 32, 33.  A hearing is not necessary.  *See* Loc. R. 105.6.

[2] Because I am deciding STG's Motion to Dismiss, I generally must accept the facts as alleged in Ward's Amended Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Except, insofar as STG contends that Ward's jurisdictional allegations are untrue, I consider the factual allegations as "mere evidence" and also "consider matters beyond the allegations in the complaint." *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013) (citations and quotation marks omitted).

2006, when Ward and Holliday and another African American team lead, Donald Beasley, were meeting with Cross and Hosea, Ward "complained to Cross and Hosea about Holliday's encouraging her team to slow their work while she was on vacation" and "criticized Holliday's meddling with her team, including contacting them outside of work and making false statements about her." *Id.* ¶¶ 44–45. Cross then "became angry and said, 'I am tired of this Nigger mess,'" and "told the team leads that there was a personality conflict between Plaintiff and Holliday and that they needed to work it out" or "she would speak . . . to Michelle Lee, STG's president." *Id.* ¶ 46. Hosea "conclude[ed] that they would not be able to resolve their personality conflict" and "told Plaintiff that he was reporting both her and Holliday to [Douglas] Kuhn," a Caucasian who supervised Cross and Hosea. *Id.* ¶ 129. He said to Ward: "Great, now I have to go and tell this White man that we cannot get along, someone has to go." *Id.* On June 27, 2006, Ward was terminated. *Id.* ¶ 67.

She filed a claim of retaliation with the MCOHR on December 21, 2006 and cross-filed it with the EEOC, and almost two years later, "[o]n December 9, 2008, the Commission completed its investigation of her claims and issued a Determination of no reasonable cause." *Id.* ¶¶ 88, 81, 97; *see id.* ¶ 114. She appealed, and five years later, on June 23, 2014, the MCOHR affirmed the Determination; the EEOC adopted the findings on September 30, 2014. *Id.* ¶¶ 116, 117, 122. Ward received a Dismissal and Notice of Suit Rights and, within ninety days, filed suit in this Court on December 30, 2014. By then, more than eight and a half years had passed since her termination.

Ward's Amended Complaint includes three claims. Count I is for "Black on Black" racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, based on her allegations that her supervisors "said, 'I am tired of this Nigger

mess,'" and "told her, 'Great, now I have to go and tell this White man that we cannot get along,'" which in her view "is evidence of racial animus towards Plaintiff for reporting the harassment she suffered from Holliday[,] a fellow Black employee." Am. Compl. ¶¶ 126–29. In Count II, Ward claims retaliation in violation of Title VII. In her view, she "engaged in protected activity when she reported Holliday for sexual harassment of a subordinate" and later reported him "for retaliation, hostile work environment and harassment." *Id.* ¶¶ 146–47. She alleges that, in retaliation, her supervisors "made unfounded complaints to STG upper management regarding Ward" and "recommended or encouraged STG upper management to discharge Ward." *Id.* ¶¶ 156–57. She claims (albeit in Count I) that she was terminated "because she complained about a fellow Black employee." *Id.* ¶ 140. Ward also claims hostile workplace in violation of Title VII in Count II, although the relevant allegations appear in Count I. She alleges that, through their racially-charged comments and their treatment of her, "Defendant had created a work environment that a reasonable person would find hostile and/or abusive," and that Ward personally found "hostile and abusive." *Id.* ¶¶ 137–38. In Count III, Ward claims hostile workplace, race discrimination and retaliation in violation of Montgomery County Human Rights Act, Montgomery Cnty. Code § 27-19, and Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601 *et seq.*[3] She alleges that "STG management racially discriminated and retaliated against Plaintiff and ultimately terminated her." Am. Compl. ¶ 174.

STG moved to dismiss Ward's initial complaint, ECF No. 12, which she filed *pro se*, and Ward retained counsel and filed a motion for leave to amend, ECF No. 21. I held a telephone

---

[3] Ward's Amended Complaint refers to the Maryland Human Rights Law, but she cites the MFEPA and discusses employment practices. Am. Compl. ¶¶ 164–65. Therefore, I construe Count III to allege a violation of the MFEPA, not the Maryland Human Rights Act. *See* Fed. R. Civ. P. 1.

conference on September 16, 2015, in which I afforded Ward the opportunity to amend but cautioned that any subsequent dismissal would be with prejudice. ECF No. 25.  Now pending is STG's second Motion to Dismiss.

**Standard of Review**

A motion to dismiss based on a plaintiff's alleged failed to exhaust administrative remedies is a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013). When a defendant argues that the allegations in the complaint are untrue, "'the Court may . . . consider matters beyond the allegations in the complaint.'" *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013) (quoting *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *3 (D. Md. Aug. 6, 2010)).   In this instance, the Court "'regard[s] the pleadings' allegations as mere evidence on the issue," and its consideration of additional evidence does not "convert[ ] the proceeding to one for summary judgment.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac Ry. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991)).  But, if the defendant contends instead that the complaint simply does not allege that the plaintiff exhausted administrative remedies, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lutfi v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013); *Fianko*, 2013 WL 3873226, at *4.

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency

of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Jurisdiction

"[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Balas*, 711 F.3d at 406. Therefore, to bring a Title VII employment discrimination claim in federal court, a plaintiff must first "exhaust his [or her] administrative remedies . . . ." *Van Durr v. Geithner*, No. 12-2137-AW, 2013 WL 4087136, at *4 (D. Md. Aug. 12, 2013) (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2004)); *see Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009). To do so, a plaintiff must file a timely administrative complaint pursuant to 42 U.S.C. § 2000e-5(e)(1). *Balas*, 711 F.3d at 406; *Jones*, 551 F.3d at 300; *Krpan v. Bd. of Educ. of Howard Cnty.*, No. ELH-12-2789, 2013 WL 4400475, at *5 (D. Md. Aug. 15, 2013). A plaintiff only exhausts her administrative remedies as to "'those discrimination claims stated in the initial charge, those

reasonably related to the original complaint, [] those developed by reasonable investigation of the original complaint,' and those contained in official amendments to the EEO complaint." *Vann Durr v. Lew*, No. DKC-12-2137, 2014 WL 4187821, at *1 (D. Md. Aug. 22, 2014) (quoting *Jones*, 551 F.3d at 300); *see Addison v. Dep't of the Navy*, No. DKC-13-846, 2015 WL 1292745, at *4 (D. Md. Mar. 20, 2015) (same); *Krpan*, 2013 WL 4400475, at *5–6 (granting motion to dismiss count for discrimination based on national origin because plaintiff "did not include such a claim in his complaint to the EEOC"); *Bryant*, 288 F.3d at 132–33 (affirming summary judgment on claims of color and sex discrimination, because EEOC charge only alleged race discrimination).   This means that "so long as 'a plaintiff's claims in her judicial complaint are reasonably related to her [administrative] charge and can be expected to follow from a reasonable administrative investigation,' she 'may advance such claims in her subsequent civil suit.'"   *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012) (quoting *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000)).   In establishing and applying this rule, the Fourth Circuit has "sought to strike a balance between providing notice to employers and the [agency] on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other."   *Id.*

Here, Ward, who sues for racial discrimination, retaliation, and hostile workplace, Am. Compl. ¶¶ 135–38, 146–47, 174, alleges that she "timely filed a charge with the . . . MCOHR[]" and "timely informed the MCOHR that she was 'terminated from her employment on the basis of *race* and in *retaliation* for her opposition to being harassed," *id.* ¶ 3 (emphasis added).   STG contends that Ward failed to exhaust her administrative remedies with regard to her racial discrimination and hostile workplace claims, because her MCOHR claim only raises retaliation as the basis for her claim.   Def.'s Mem. 13.   Thus, as for Ward's racial discrimination claim,

STG argues that Ward's allegations of presenting this claim to the agency are untrue, whereas for Ward's hostile workplace claim, STG argues that Ward failed to allege that she exhausted her administrative remedies for this claim. *See id.*

Indeed, Ward's December 21, 2006 MCOHR charge lists the "Basis(es) of Alleged Discrimination" as "Retaliation." Compl. of Alleged Discrim. in Empl., Def.'s Mem. Ex. 2, ECF No. 30-3. And, Ward concedes, as she must, that the MCOHR charge "alleg[ed] that her June 27, 2006 termination from her position with STG International constituted prohibited *retaliation*." Pl.'s Opp'n 8 (emphasis added); Am. Compl. ¶¶ 88. Additionally, she only argues that her "Amended Complaint actually presents a prima facie case of *discrimination and retaliation*," not hostile workplace. Pl.'s Opp'n 11 (emphasis added). Thus, to the extent Ward pleaded hostile workplace under Title VII or state or county law, she has abandoned those claims, which would be subject to dismissal for failure to exhaust administrative remedies. *See Adams*, 697 F.2d at 1219; *Vann Durr*, 2013 WL 4087136, at *4.

Ward insists that she "subsequently informed MCOHR that her race (African-American) was another basis for the same adverse action" and that "her internal complaints of harassment and retaliation had been referred to as 'Nigger Shit.'" Pl.'s Opp'n 8; Am. Compl. ¶¶ 88–93, 99-100, 126–27. Certainly, the Determination states that Ward "claim[ed] she was discriminated against and her employment terminated on the basis of race and in retaliation for reporting discriminatory conduct," and the MCOHR Director concluded that Ward was not subject to racial discrimination. Determination 5, 10, Def.'s Mem. Ex. 3, ECF No. 30-4. Thus, MCOHR was aware that Ward believed that she was discriminated against on the basis of race.

Yet, it is undisputed that race was not a basis for discrimination in her administrative claim. *See* Def.'s Mem. 13; Pl.'s Opp'n 8. Moreover, Ward does not suggest that she amended

her claim.  Nor does she identify any document, whether formal or informal, that she submitted to the agency, seeking to amend her claim.  Further, while discussing Ward's allegations of racial discrimination, the Determination characterizes them as "new allegations not mentioned in the complaint," but rather introduced in Ward's rebuttal.  Determination 5.

"[O]ne of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it."  *Sloop v. Mem'l Mission Hosp., Inc.*, 199 F.3d 147, 149 (4th Cir. 1999).  In *Sloop*, the Fourth Circuit concluded that a letter that Sloop sent to the EEOC "more than two months after her initial charge had been filed," stating that she was "aware that [she] need[ed] to add a charge of retaliation," was insufficient to amend the original charge because "Sloop took no action to amend her charge subsequent to sending the letter," and the informal letter did not put "the charged party on notice of the claims raised against it."  *Id.* Here, likewise, any undocumented communications Ward claims to have had with the agency without formally amending her claim failed to put STG on notice of a racial discrimination claim against it.  *See id.*  Nor does an argument in a rebuttal put an employer (that already set forth its position with respect to those claims about which it had notice, based on Plaintiff's charge) on notice to defend against that claim.  *See id.*

In addition, racial discrimination is wholly unrelated to retaliation for complaining about the sexual harassment of another and cannot be reasonably anticipated based on Ward's retaliation claim.  *See Sydnor*, 681 F.3d at 594; *Smith,* 202 F.3d at 247.  Therefore, Ward failed to exhaust her administrative remedies with regard to her racial discrimination claim.  *See Sydnor*, 681 F.3d at 594; *Jones*, 551 F.3d at 300; *Smith,* 202 F.3d at 247; *Vann Durr*, 2014 WL 4187821, at *1.  Accordingly, this Court lacks jurisdiction over Ward's racial discrimination claims.  *See Balas*, 711 F.3d at 406.

## Failure to State a Claim (Retaliation)

To state a claim for retaliation under Title VII, the MFEPA, or Montgomery County Code § 27-19,[4] a plaintiff must allege sufficiently that (1) she "'engaged in protected activity,'" (2) her employer "'took adverse action against [her],'" and (3) "'a causal relationship existed between the protected activity and the adverse employment activity.'" *Westmoreland v. Prince George's Cnty., Md.,* 876 F. Supp. 2d 594, 612 (D. Md. 2012) (quoting *Price v. Thompson,* 380 F.3d 209, 212 (4th Cir. 2004)); *see Mason v. Montgomery Cnty.*, No. PWG-13-1077, 2015 WL 3891808, at *7 (D. Md. June 23, 2015). Relevantly, "'[a]n employee who opposes a hostile work environment is engaged in a 'protected activity' and cannot be retaliated against.'" *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 315 (D. Md. 2015) (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 351–52 (4th Cir. 2006) (King, J., dissenting), *overruled by Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015)). Ward claims that she engaged in protected activity when she complained about Holliday's comment to Simmons, which she perceived as sexual harassment that created a hostile workplace.

STG challenges this first element, insisting that "Plaintiff did not engage in protected activity." Def.'s Mem. 19. In its view, Ward's complaint about Holliday's comment to Simmons was not protected activity because it was not objectively reasonable for her to believe

---

[4] "The MFEPA 'is the state law analogue of Title VII.'" *Royster v. Gahler*, --- F. Supp. 3d ----, 2015 WL 9582977, at *4 (D. Md. Dec. 31, 2015) (quoting *Alexander v. Marriott Int'l, Inc.*, RWT-09-02402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011); citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 743 n.8 (Md. 2007)). Additionally, "Maryland courts construe . . . claims [under the Montgomery County Human Rights Act] similarly to those made under Title VII." *Whittaker v. David's Beautiful People, Inc.*, No. DKC 14-2483, 2016 WL 429963, at *2 (D. Md. Feb. 4, 2016); *see Haas*, 914 A.2d at 756 (stating that, with regard to Title VII, MFEPA, and the Montgomery County Code provisions pertaining to unlawful employment practices, "it is appropriate to consider federal precedents when interpreting state and local laws"). Therefore, I will analyze Ward's retaliation claims under federal, state, and local law together.

that she was opposing a Title VII violation, that is, that Holliday's comment constituted sexual harassment. *Id.* at 21. "[A]n employee is protected from retaliation for opposing an isolated incident of harassment when she reasonably believes that a hostile work environment is in progress"; such a belief is reasonable "if the isolated incident is physically threatening or humiliating." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 284 (4th Cir. 2015).

While Holliday's comment to Simmons that he "ha[d] something for [her] to choke on" may have been humiliating, such that it may have provided a basis for Ward to "reasonably believe[] that a hostile work environment was in progress" and to be protected for opposing the comment, *see id.*, STG does not only challenge the severity of the comment. It also contends that Ward's retaliation claim fails because the perceived harassment was not "'based on the plaintiff's gender,'" as it must be for Ward's claim to succeed. Def.'s Mem. 22 (quoting *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 260 (4th Cir. 2001)). Indeed,

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "*discriminat [ion]* ... because of ... sex." [The Supreme Court has] never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). Thus, "it is not enough that the challenged conduct be sex-specific. Since a hostile work environment claim is fundamentally a sex discrimination claim, a male plaintiff must establish that the harasser discriminated against him, i.e., treated him differently or with greater hostility, because he is a male." *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 261 (4th Cir. 2001). Likewise, a plaintiff like Ward who alleges the sexual harassment of another must show that the harasser "treated [that person] differently or

with greater hostility," because of that person's gender. *See id.* The employee "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discriminat[ion]* . . . because of . . . sex.'" *Oncale*, 523 U.S. at 81. Simply put, it is not sexual harassment if a harasser is "indiscriminately vulgar and offensive . . . , obnoxious to men and women alike." *Lack*, 240 F.3d at 262.

Ward does not address this argument in her Opposition. Moreover, she does not claim in her Amended Complaint that Holliday made the offensive comment to Simmons because she was female or that he treated males differently. Therefore, Ward has not alleged sufficiently that Holliday's indisputably vulgar and inappropriate conduct "was not merely tinged with offensive sexual connotations, but actually constituted '*discriminat[ion]* . . . because of . . . sex.'" *Oncale*, 523 U.S. at 81. Consequently, Ward has not alleged sufficiently that she engaged in protected activity when she opposed Holliday's comment. *See id.*; *Lack*, 240 F.3d at 262. As a result, she fails to state a claim for retaliation.[5] *See Price,* 380 F.3d at 212; *Westmoreland*, 876 F. Supp. 2d at 612.

---

[5] Because I conclude that Ward fails to state a claim for retaliation under federal, state or county law, I need not reach the affirmative defenses of laches (with regard to the Title VII claims) and statute of limitations (with regard to the MFEPA and Montgomery County Code claims). However, I note that "[t]here is no provision in the MFEPA to toll the two-year statute of limitations while the administrative process unfolds." *Westmoreland v. Prince George's Cnty.*, No. TDC-14-821, 2015 WL 996752, at *13 (D. Md. Mar. 4, 2015). To be "'entitled to equitable tolling,'" Ward would have to "show[] '(l) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation omitted). But Ward simply argues for equitable tolling on the bases that her administrative filings were timely and "[t]he MCOHR never informed Plaintiff of the running of any limitation period." Am. Compl. ¶¶ 113–23. "[L]ack of knowledge of the law is not the type of extraordinary circumstance which would justify equitable tolling." *Chatman v. Green*, No. PWG-15-2827, 2016 WL 1588496, at *3 (D. Md. Apr. 19, 2016); *see also Rouse v. Lee*, 339 F.3d 238, 248–49 (4th Cir. 2003) (counsel's negligent mistake in interpreting relevant statute of limitations is not extraordinary circumstance warranting equitable tolling). Further, equitable tolling is an extreme remedy that "has been applied in 'two generally distinct kinds of situations,'" (1) where "'the plaintiffs were prevented

**Conclusion**

In sum, Ward has abandoned her hostile workplace claims, this Court lacks jurisdiction over Ward's racial discrimination claims, and Ward fails to state a claim for retaliation based on her opposing Holliday's comment. Therefore, I will dismiss Ward's Amended Complaint in its entirety. The dismissal shall be with prejudice, given that Ward already had the opportunity to amend to address the deficiencies STG identified in her original complaint, and further amendment would be futile. *See* ECF No. 25; *McLean v. United States*, 566 F.3d 391, 400–01 (4th Cir. 2009) ("Once a court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant, as the claim cannot be made viable through reformulation." (internal citation omitted)).

**ORDER**

Accordingly, it is this <u>14th</u> day of <u>June</u>, <u>2016</u>, hereby ORDERED that

1. STG's Motion to Dismiss, ECF No. 30, IS GRANTED;

2. Ward's Amended Complaint IS DISMISSED WITH PREJUDICE; and

3. The Clerk SHALL CLOSE this case.

_____/S/_____

Paul W. Grimm

United States District Judge

lyb

---

from asserting their claims by some kind of wrongful conduct on the part of the defendant,'" and (2) where "'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (citation omitted). Ward does not allege any wrongful conduct by STG, and there were no extraordinary circumstances beyond her control. *See id.* Therefore, Ward's state and county claims, had they been pleaded sufficiently, filed eight and a half years after the alleged unlawful employment practice, i.e., her termination, would be barred by the applicable two year statutes of limitation. *See* Md. Code Ann., State Gov't § 20-1013(a)(3), § 20-1202(b), (c)(1).